M. J. KELLY CO. *v.* HAENDIGES ET AL., APPELLANTS;
SHAKER MECHANICAL CORPORATION, APPELLEE.▮

[Cite as M. J. Kelly Co. v. Haendiges (1978),
60 Ohio App. 2d 318.]

(No. 38117—Decided July 6, 1978.)

*Mr. Joel I. Newman,* for appellee.
*Mr. Leonard P. Gilbert,* for appellant.

CORRIGAN, C. J. This suit was originally brought by M. J. Kelly Co. against numerous defendants. The instant appeal involves only the cross claim of defendant-appellee, Shaker Mechanical Corp., against defendant-appellant, Roger M. Haendiges. All other parties and claims were disposed of by the trial court; the sole issue before this Court is the validity of appellee's mechanic's lien against appellant's property.

The facts relevant to this appeal are as follows. Appellant owns property upon which the Calvon Corporation contracted as general contractor to build a supermarket. Appellee subcontracted with Calvon to install a heating and air conditioning system in the building. The contract price was $26,900. Appellee billed Calvon for work completed at several stages of the construction; the last bill was termed "Billing in full, final billing," and dated May 25, 1974.

There was conflicting testimony regarding when the contract was completed. Mr. Macsay, vice president of appellee, testified that the company never billed for work unless it had been completed. Under this reasoning, the contract would have been completed on or before May 25, 1974, the date of the invoice stating "final billing." However, Mr. Macsay also stated that the job "wasn't final" until June 6, 1974, the date that the air conditioning was tested, and that the final date of work on the contract was May 30, 1974.

Other conflicting testimony consisted of appellant's assertion that work was completed some time before June 1, 1974, when the tenant ("Allied") took possession of the premises:

"Q And on June 1, 1974, was there any more work to be done upon the premises?

"A No.

"Q Would you have permitted Allied to move into the premises had work been required to have been done?

"A It would have been impossible for them to move in and risk the security of losing some of their equipment if there was any work to be done on the property."

However, a letter from Allied to appellant, dated June 10, 1974, inferred that work may not have been completed as of June 1:

"Please be advised that we have accepted possession of the leased premises effective June 1, 1974, *subject only to whatever defects or omissions remain outstanding* on said date."

Of the total $26,900 billed by appellee to Calvon, Calvon paid appellee $10,000 leaving a balance still owing of $16,800. On July 31, 1974, appellee filed an Affidavit to Obtain A Mechanic's Lien with the Cuyahoga County Recorder. Appellant was served with a copy of the affidavit on August 17,

1974. Appellee also served an affidavit of subcontractor on both appellant and Calvon Corporation on October 14, 1974. Neither of these affidavits was signed.

The trial court found that the appellee had a valid mechanic's lien upon appellant's property. Appellant filed a surety bond pursuant to R. C. 1311.11, and the Court discharged the mechanic's lien.

Appellant assigns three errors:

I. The trial court erred in determining that the mechanic's lien of the defendant appellee, Shaker Mechanical Corp., was a valid and subsisting lien upon the appellant's real property.

II. The trial court erred in determining that the appellee's affidavit to obtain a mechanic's lien was filed within the time prescribed by law.

III. The judgment of the trial court was clearly against and unsupported by the manifest weight of the evidence.

I.

The first assignment of error raises the question of whether a subcontractor is required to file the affidavit of subcontractor referred to in R. C. 1311.04 with either the general contractor or the property owner as a prerequisite to obtaining a mechanic's lien. The question includes the interpretation of both R. C. 1311.04 and of several conflicting cases decided under that statute.

R. C. 1311.04 is a complex and often confusing[1] provision of the mechanic's lien law. It must be complied with before a contractor, subcontractor, materialman or laborer can sue or obtain a lien for money due him. While the entire statute is far too lengthy to quote, the portions relevant to the instant case state:

"Whenever any payment of money becomes due from the owner***or whenever the original contractor desires to draw any money from the owner,***such contractor shall make out and give to the owner***a statement under oath, showing***the name and address of every subcontractor in his employ***.

---

[1] *See generally* Note, *The Right to a Mechanic's Lien in Ohio: A Survey,* 18 Western Reserve Law Review 297 (1966). Illustrative of the section's cryptic nature is the fact that three of its sentences each exceed 125 words.

"The original contractor shall also deliver to such owner\*\*\*similar sworn statements from each subcontractor\*\*\*.

"Until the statements are made and furnished in the manner and form provided for in this section\*\*\*the subcontractor has no right of action or lien against the owner\*\*\*and any payments made by the owner\*\*\*before such statements are made\*\*\*are illegal.\*\*\*"

The gravamen of appellant's first assignment of error is his contention that this section prohibits a subcontractor from obtaining a mechanic's lien until he has furnished the general contractor with the affidavit which it describes.

Several Ohio cases have addressed this question. In *Williamson Heater Co.* v. *Radich* (1934), 128 Ohio St. 124, a subcontractor filed an action to foreclose a mechanic's lien. The subcontractor had served the affidavit of subcontractor required by R. C. 1311.04 (then G. C. 8312) upon the general contractor [2] but not with the property owner. The general contractor did not supply the owner with this statement. The Court held that, while the general contractor was under a clear duty to furnish the owner with both his own affidavit and the affidavits of his subcontractors, the subcontractors owed the owner no such duty. The Court reasoned:

"What then is the significance of the words, 'such statements' to be furnished by the subcontractor? Thus far the only 'statements' mentioned in the statute in connection with the subcontractor are those to be furnished by him to the contractor. How then can it logically be urged that this reference is to statements to be furnished by the subcontractor to the owner? Not until the last sentence in the whole statute is anything said about a statement to be furnished by the subcontractor directly to the owner." 128 Ohio St. at 127.

The Court concluded its analysis by holding that the only time the subcontractor is under a duty to furnish the owner with the affidavit is when he receives such a demand from the owner. *Id.* Thus, absent a demand from the owner, a subcontractor who furnishes a general contractor with an R. C.

---

[2]The fact that the affidavit was filed with the general contractor is not clear from the *Williamson Heater* opinion, but was revealed in *Hoon* v. *Ross* (1940), 31 Ohio Law Abs. 275, 278, in which the Court explained the *Williamson Heater* holding by analyzing its pleadings.

1311.04 affidavit is under no duty to do more and is not prohibited by that section from obtaining a mechanic's lien.

The converse to the *Williamson Heater* problem arose in *D'Antonio Plumbing & Heating Co.* v. *Strollo* (1959), 84 Ohio Law Abs. 551. In that case, the subcontractor furnished the property owner with an R. C. 1311.04 affidavit, but failed to serve the affidavit on the general contractor. The trial court held that service of the affidavit upon the property owner constituted compliance with the statutory requirements of R. C. 1311.04, even though no service of the affidavit was given to the general contractor. The Court of Appeals affirmed, stating (twice):

"The purpose of requiring a sub-contractor to furnish affidavits to the original contractor is to advise the owner of any claims in order that the owner may be protected." 84 Ohio Law Abs. at 553 and 554.

It must be noted that the Court relied in part on the decision of the Court of Appeals in the *Williamson Heater* case, see 84 Ohio Law Abs. at 554, and apparently was unaware that this decision had been reversed by the Supreme Court.

Both *Williamson Heater* and *D'Antonio Plumbing* were analyzed in *Uneco, Inc.* v. *Metropolitan Dev. Corp.* (1973), 34 Ohio Misc. 58. In that case, the subcontractor did not file the R. C. 1311.04 affidavit with either the general contractor or the property owner. Nevertheless, the Court concluded that absent a demand for an affidavit by either the general contractor or the property owner, the subcontractor was not required to furnish the affidavit to perfect his lien. 34 Ohio Misc. at 63. In reaching this conclusion, the Court dismissed as *obiter dicta* the language of preceding cases which indicate that furnishing the affidavit is the *sine qua non* to the procurement of a valid lien. *See* 34 Ohio Misc. at 61.

In the instant case, the trial court ruled that appellee's mechanic's lien was valid although he furnished neither the general contractor nor the property owner with a properly executed R. C. 1311.04 affidavit. In so ruling, the Court relied on both *Williamson Heater* and *Uneco*. We find this reliance to be misplaced and must therefore reverse.

It is well settled that the procedural steps necessary to create a mechanic's lien must be strictly adhered to. *Robert Clapp Co.* v. *Fox* (1931), 124 Ohio St. 331, 335. R. C. 1311.04 constitutes one of those procedural steps:

"Until the statements are made and furnished in the manner and form provided for in this section, the contractor has no right of action or lien against the owner***and the subcontractor has no right of action. or lien against the owner***until he has furnished *such statements***.*" (Emphasis added.)

In analyzing this language, the Supreme Court has noted that the language "such statements" refers to affidavits that the statute requires the subcontractor to serve on the general contractor. *Williamson Heater, supra,* at 127. Thus, absent such service, the subcontractor has no right of action or lien against the owner.

This conclusion finds additional support in *Schultz* v. *Walker* (1929), 111 Ohio St. 308. In that case, the Court analyzed G. C. 8312, the predecessor to R. C. 1311.04,[3] and made the following statement:

"***Section 8312 nowhere provides that the subcontractor must of his own accord and without request from the owner serve statements upon the owner to secure his lien. The statements required from the subcontractor, as shown by the form of the affidavit set forth in Section 8312, are to be given by the subcontractor to the original contractor and by him given to the owner. It is true that the section contains a provision that 'the subcontractor shall have no right of action or lien against the owner***until he shall have furnished such statements.' But this provision does not require the subcontractor to serve the statements directly upon the owner. *It does enjoin upon him the duty of giving the statements to the original contractor.* The section concludes with the provision that if the owner demands such statements, the subcontractor is bound to furnish them; but it does not require the subcontractor to serve a statement and affidavit upon the owner unless requested." 111 Ohio St. at 310 (Emphasis added).

Thus, to perfect his lien, the subcontractor must furnish the general contractor with a copy of the R. C. 1311.04 affidavit, but need not give the property owner such a copy unless it is requested. In light of this analysis, both the *Uneco* and the *D'Antonio* holdings appear to be incorrect.

In the instant case, appellee furnished no one with a copy of the R. C. 1311.04 affidavit. The trial court was therefore

---

[3] The language of these two statutes is nearly identical.

incorrect in holding the lien to be valid. Appellant's first assignment of error is well taken.

## II.

In his brief, appellant argues his second and third assignments of error together; consequently they are treated here as a single assignment of error. This argument contends that the appellee's Affidavit to Obtain A Mechanic's Lien was invalid because it was not timely filed.

R. C. 1311.06 requires a person seeking a Mechanic's Lien to file an affidavit with the County Recorder:

"***within sixty days from the date on which the last of the machinery, material, or fuel was furnished at the building, or the last of the labor was performed by the person claiming the lien.***"

Appellee's affidavit was filed with the Cuyahoga County Recorder on July 31, 1974, and thus the question before us is whether the record supports a finding that all work was completed by appellee on or after May 31, 1974.

In *Levin* v. *Nielsen* (1973), 37 Ohio App. 2d 29, this Court noted that an appellate court cannot substitute its view of the evidence for that of the trial court, and cannot reverse a factual determination of that court "***unless it appears that the evidence was not sufficient to enable reasonable minds to render the judgment entered." 37 Ohio App. 2d at 31 (citations omitted).

In the instant case, there was conflicting evidence regarding the date upon which appellee completed the installation. However, ample evidence supports the conclusion of the trial court that the work was not completed until May 31, 1974, or sometime thereafter. Therefore, appellant's second and third assignments of error are overruled. Accordingly, the judgment of the trial court is reversed, and the cause is remanded to the Court of Common Pleas for further proceedings consistent with this opinion.

*Judgment reversed.*

KRENZLER, J., concurs.
KRUPANSKY, J., concurs in the judgment only.